LUIS J. NICOLE, demandante y recurrido, *v.* PONCE YACHT CLUB, demandado y recurrente.

*Número:* R-66-229 *Resuelto:* 26 de junio de 1968

*Charles R. Cuprill,* abogado del recurrente; *Hartzell, Fernández & Novas* y *Vicente M. Ydrach,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

La cuestión a resolver es si procede condenar al recurrente por los daños ocasionados al recurrido con motivo de la destrucción del yate de aquél debido a que dicha embarcación fue amarrada por el recurrente con una soga a una boya de anclaje perteneciente al recurrido de la cual fue separada por los vientos ocasionados por un ciclón que pasó a unas 200 millas al sur de Ponce. El tribunal de instancia concluyó que el amarre del yate a la boya fue realizado negligentemente por el recurrente y que por lo tanto éste debe responder de los daños ocasionados al recurrido. Concluimos que esta conclusión no está justificada en derecho y por lo tanto debe revocarse la sentencia en este caso y desestimarse la demanda.

El recurrido Sr. Luis J. Nicole era dueño del yate "Mariebess." Era miembro del club recurrente. Luego de repararlo dejó dicho yate en el embarcadero (*slip*) del club donde, a solicitud del recurrido, el club proveyó ganchos adicionales para hacer más sólido el amarre del yate al embarcadero. Por el uso de ese embarcadero el recurrido debía pagar $16 mensuales. De acuerdo con un reglamento interno que regulaba las relaciones de los miembros en el club, este último no asumía obligación de clase alguna por lo que le pasara a los yates mientras usaban los embarcaderos. La mensualidad, que era distinta para cada miembro, dependía del tamaño del yate y cubría el servicio de agua y electricidad que necesitara el yate. Si el yate necesitaba reparación o cuido, el club le cobraba una cantidad aparte a cada miembro.

El recurrido, Sr. Nicole, dejó de usar el referido yate "Mariebess" por espacio de un año pero tenía un empleado que cada mes o mes y medio iba al yate para limpiarlo y desaguarlo. Durante todo ese tiempo el recurrido fue solamente una vez al club, con sus hijas, y los amigos de sus

hijas. Esa única vez que fue, el yate estaba en el embarcadero.

En algún momento antes del 25 de septiembre de 1963, el administrador del club, Sr. Vidal, pidió autorización al recurrido para trasladar el yate desde el embarcadero hasta una boya de anclaje (muerto) propiedad del recurrido que éste tenía en la rada del club. Hay un conflicto irreconciliable en la prueba en cuanto al momento de la solicitud de esa autorización. Según la prueba del recurrente fue cerca de seis meses antes del 25 de septiembre. Según la prueba del recurrido fue mes y medio antes. De todos modos hay evidencia de que en algún momento antes de esa fecha la autorización fue solicitada. Surge otro conflicto en cuanto a si la autorización fue concedida o no. No obstante, es claro que con el permiso o sin él, el yate fue trasladado a la boya de anclaje. Sin embargo, del propio testimonio del recurrido surge claramente que él sabía que ese yate había sido removido. Veamos su declaración en cuanto a este aspecto.

"Lcdo. Ydrach:

¿Señor Nicole, recuerda usted alguna ocasión en que el señor Vidal lo llamara por teléfono o lo viera personalmente a usted en su establecimiento antes del ciclón de septiembre de '63 y le pidiera permiso para mover el 'Mariebess' del 'slip' al muerto y que usted le hubiera dado su consentimiento?
Testigo:

No señor, el señor Vidal me llamó por teléfono como un mes y medio o dos antes del ciclón y me sugirió que sacara el bote, que costaba quince dólares; que en el muerto me podría salir más barato, de hecho me llamó y yo le dije que no, que no moviera el bote; *posteriormente a eso mandó un empleado del club o alguien a mi oficina para decirme a mí que fuera allá para presenciar que iban a sacar el bote, yo no estuve presente.*" (Énfasis suplido.)

Los empleados del club sacaron el yate del embarcadero y lo llevaron a la boya de anclaje donde lo amarraron con una soga de una pulgada de espesor, porque la cadena pro-

piedad del recurrido estaba sucia, llena de vida marina y el empleado, al sacarla, se cortó las manos.

El 25 de septiembre de 1963 se anunció el paso de un ciclón cerca de la costa sur de Puerto Rico. Pasó como a 200 millas al sur de Ponce. El yate "Mariebess" partió sus amarras y fue impulsado por los vientos y las mareas hasta la isla Cardona al sur de Ponce donde se encalló. El juez sentenciador encontró que entre el recurrido y el recurrente existía una relación de depósito y dictaminó que el club fue negligente al amarrar el yate con una soga a la boya de anclaje por lo que lo responsabilizó por los daños ocasionados al recurrido con motivo de haberse soltado el yate de la boya. Los daños, según el tribunal de instancia, consistieron en:

(a) Destrozos sufridos por el yate $10,000.00

(b) Cantidad a invertir para mover el yate a San Juan por ser el único sitio donde podía ser reparado 2,500.00

(c) Cantidad pagada por el recurrido a los guardianes que cuidaron del yate en la isla Cardona 2,252.50

(d) Cantidad pagada por el recurrido en mover la embarcación 400.00

(e) Por la pérdida de uso, placer y disfrute de la embarcación 1,000.00

Los diez apuntamientos del apelante cuestionan, en síntesis, la conclusión del tribunal al efecto de que (1) la relación existente entre las partes en esta causa era una de depositante y depositario; (2) la operación de amarrar el yate a la boya de anclaje fue realizada negligentemente; (3) el recurrente responde por los daños sufridos por el recurrido; (4) la concesión de daños es improcedente y excesiva; (5) no declarar al recurrido negligente al tener abandonada su embarcación y no asegurarla ante el aviso de tormenta.

. 1.—Del amarre de la embarcación del recurrido al embarcadero del recurrente no surgió la relación de depositante y depositario. La determinación básica que hay que hacer para concluir que en un caso en particular se ha constituido un contrato de depósito es si se ha realizado o no una entrega de la cosa; si el depositario ha obtenido la posesión así como el control efectivo de la cosa al extremo de excluir la posesión del dueño mismo así como de cualquier otra persona. *Rivera* v. *San Juan Racing Assoc., Inc.*, 90 D.P.R. 414 (1964). En el caso ante nos la prueba no revela que el recurrente tuviese la posesión exclusiva de la embarcación. Revela lo contrario. El mismo recurrido declaró en una toma de deposición que se le hizo y que está admitida en evidencia, que el único que ejercía control o dominio sobre el yate mientras estaba en el embarcadero era él, "como su dueño que era"; lo podía sacar cuantas veces quisiera sin tener que notificarlo a nadie. Además declaró en la vista que él tenía un empleado que iba cada mes o mes y medio a limpiar y desaguar el yate. Durante su testimonio se expresó así: "No existe contrato por escrito pero existe el contrato más bien la casa club le da a uno agua, luz eléctrica, si al bote le pasa algo los empleados del club se ocupan y lo arreglan, si el bote se suelta lo van a buscar y por la noche tienen un 'watchman' que da la ronda y vela que todo esté bien y bajo esas condiciones tenemos nuestros botes."

En vista de lo expuesto incidió el tribunal de instancia al concluir que existía un contrato de depósito entre las partes litigantes.

2.—Sostuvo el tribunal de instancia que el recurrente fue negligente al permitir que sus empleados movieran la embarcación en cuestión de su embarcadero a la boya de anclaje, con o sin permiso del recurrido, y la amarraran a dicha boya con una soga en lugar de hacerlo con la cadena de la boya y que por lo tanto responde al recurrido de los

daños que éste sufrió resultantes de la separación de la embarcación de la boya.

■ A los efectos de determinar si el recurrente fue negligente al amarrar el yate a la boya con una soga, debemos determinar si el daño ocasionado al recurrido era o no razonablemente previsible. *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20, 25 (1964).

En el caso de autos, hay prueba de que el yate fue amarrado con una soga de una pulgada de espesor a la boya de anclaje y que dicho yate estuvo allí por espacio de seis meses o por espacio de mes y medio antes de que ocurriera una tormenta. El testimonio de los peritos, aun los del recurrido, fue en el sentido de que en circunstancias normales, si la soga es bastante gruesa y el yate está bien amarrado, es perfectamente correcto ese tipo de amarre. Durante el tiempo antes del ciclón en que el yate estuvo allí amarrado no hay prueba de que le sucediera nada. De eso se infiere que, como declararon los peritos, en circunstancias normales es perfectamente correcto que se amarre así. La cuestión es si podría el recurrente razonablemente prever la magnitud de los efectos del ciclón que pasó a 200 millas al sur de Ponce y prever, además, que el recurrido se cruzaría de brazos y no se ocuparía de proteger su propiedad.

La práctica en Ponce, según surge de la prueba y del propio testimonio del recurrido, es que en tiempos de ciclones, los dueños de las embarcaciones sacan sus yates del embarcadero y los fondean en Guayanilla. Aun los que los dejan en el embarcadero se ocupaban de asegurarse que estaban bien amarrados y para más seguridad le proveían más amarres.

No creemos que el recurrente podía prever que al darse el aviso de ciclón el recurrido dejase de proteger su embarcación como lo hicieron los otros dueños de yates en el embarcadero del recurrente. Tampoco podía prever que un ciclón que pasó a 200 millas al sur de Ponce causase tales vientos y

marejadas que destruyese no tan sólo la embarcación del recurrido sino también el único yate que permaneció amarrado al embarcadero del recurrente y la carretera que conectaba al puente con la casa club.

*En vista de lo expuesto, se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de Ponce, en 21 de junio de 1966, y se dictará otra desestimando la demanda.*